IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RIDESHARE DISPLAYS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1629-RGA-JLH |
| | ) | |
| LYFT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT LYFT, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Jennifer C. Tempesta
Baker Botts L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, NY 10112-4498
(212) 408-2500

*Attorneys for Defendant*

Jeremy J. Taylor
Baker Botts L.L.P.
101 California Street, Suite 3600
San Francisco, CA 94111
(415) 291-6200

Dated: February 9, 2021

{01660210;v1 }

## <u>TABLE OF CONTENTS</u>

I.     NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 1

II.    SUMMARY OF THE ARGUMENT ................................................................................... 1

III.   FACTUAL BACKGROUND ............................................................................................... 1

IV.    ARGUMENT ........................................................................................................................ 3

      A.    The Claims of the Asserted Patents are Invalid Under 25 U.S.C. § 101 .................... 3

           1.    *Alice Step One*: the claims of the asserted patents are directed to the
                abstract idea of identifying a particular vehicle using visual indicators ............. 3

           2.    *Alice Step Two*:  the claims of the asserted patents rely on well-
                understood, routine, and conventional activities ................................................. 7

           3.    Claim 1 of the '987 Patent is representative of all claims of the asserted
                patents ................................................................................................................. 12

      B.    The Complaint Fails to Plausibly Allege Direct Infringement of the '199 Patent ...... 18

V.     CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
　882 F.3d 1121 (Fed. Cir. 2018)............................................................................3

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
　838 F.3d 1266 (Fed. Cir. 2016)............................................................................4

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
　838 F.3d 1253 (Fed. Cir. 2016)...............................................................3, 7, 14, 15

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
　797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ....................................................18, 19

*Alice Corp. v. CLS Bank Int'l*,
　573 U.S. 208 (2014)........................................................................................3, 8

*Apple v. Ameranth*
　842 F.3d 1229 (Fed. Cir. 2016)........................................................................9, 10

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)...........................................................................................18

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
　687 F.3d 1266 (Fed. Cir. 2012)........................................................................9, 12

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)...........................................................................................18

*Berkheimer v. HP Inc.*,
　881 F.3d 1360 (Fed. Cir. 2018)............................................................................8

*Blackbird Tech. v. Uber Techs., Inc.*,
　No. 19-561 (MN), 2020 WL 58535 (D. Del. Jan. 6, 2020) ....................................4

*Concaten, Inc. v. Ameritrak Fleet Sols.*,
　131 F. Supp. 3d 1166 (D. Colo. 2015)...................................................................6

*Content Extraction and Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*,
　776 F.3d 1343 (Fed. Cir. 2014)......................................................................10, 13

*Elec. Power Grp., LLC v. Alstom S.A.*,
　830 F.3d 1350 (Fed. Cir. 2016)..........................................................7, 11, 12, 16, 17

*Fast 101 Pty Ltd. v. Citigroup Inc.*,
   424 F. Supp. 3d 385 (D. Del. 2020)..................................................................13, 14, 15, 16, 17

*Fast 101 Pty Ltd. v. CitiGroup Inc.*,
   No. 2020-1458, 2020 WL 6947911 (Fed. Cir. Nov. 25, 2020) ................................................13

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)..................................................................................................5

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   No. 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) .................................................19

*MacroPoint LLC v. FourKites, Inc.*,
   No. 1:15-1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015).................................................6

*Mayo Collaborative Serv. v. Prometheus Lab., Inc.*,
   566 U.S. 66 (2012) ....................................................................................................................8

*Natera, Inc. v. ArcherDX, Inc.*,
   No. 20-125-LPS, 2020 WL 6043929 (D. Del. Oct. 13, 2020)..................................................13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).................................................................................................5, 6

*SmileDirectClub, LLC v. Candid Care Co.*,
   No. 20-0583-CFC, 2020 WL 7190797 (D. Del. Dec. 7, 2020) ...............................................17

*SynKloud Techs., LLC v. HP Inc.*,
   No. 19-1360-RGA, 2020 WL 5798725 (D. Del. Sept. 29, 2020)...........................................3, 4

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1378 (Fed. Cir. 2019)..................................................................................................6

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)..................................................................................................7

**STATUTES**

35 U.S.C. § 101...........................................................................................................1, 3, 20

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On November 30, 2020, Plaintiff RideShare Displays, Inc. ("RSDI" or "Plaintiff") filed a Complaint against Lyft, Inc. ("Lyft"), alleging infringement of U.S. Patent Nos. 9,892,637 ("the '637 Patent"), 10,169,987 ("the '987 Patent"), 10,395,525 ("the '525 Patent"), 10,559,199 ("the '199 Patent"), and 10,748,417 ("the '417 Patent"), all related and entitled "Vehicle Identification System" (collectively, the "asserted patents").   Before service of the original Complaint, on January 8, 2021, RSDI filed an Amended Complaint, D.I. 6 ("Complaint").

## II.    SUMMARY OF THE ARGUMENT

RSDI's Complaint should be dismissed with prejudice for the following reasons:

*First,* the claims of the asserted patents are directed to patent ineligible subject matter under 35 U.S.C. § 101 by claiming the abstract idea of identifying a particular vehicle with visual indicators, using well-known technology that fails to incorporate inventive concepts.  The claims seek to patent the long-known process of using a visual indicator, such as a sign or digital display to direct a passenger to a vehicle, such as a taxi or airport car service, using conventional technologies.

*Second,* for the '199 Patent, the Complaint fails to plausibly allege that each step of the asserted method claim is performed by Lyft or attributable to Lyft as required to show infringement.   In particular, the '199 Patent claims require steps to be performed by multiple parties and actors, including a ride requester, controller, display, driver's device, and rider's device.

## III.    FACTUAL BACKGROUND

The '637 Patent, filed on May 27, 2015, is titled "Vehicle Identification System."  D.I. 6-1 ('637 Patent).  The remaining asserted patents are continuations of the '637 Patent and share the same title and specification.  D.I. 6-2 ('987 Patent), 6-3 ('525 Patent), 6-4 ('199 Patent), 6-5 ('417

Patent).

The asserted patents describe the technical field of the inventions as relating "generally to a system and method for vehicle identification" and providing "an indicator on a mobile communication device of a user having requested a ride service to allow the user to identify a vehicle prior to boarding the vehicle." D.I. 6-1 at 1:20–25. According to the patents, the alleged invention concerns "provid[ing] a notification signal for activating a driver's mobile communication device to generate a signal representing an indicator, whereby the indicator is displayed on a display visible from the exterior of the vehicle." *Id*. at 3:10–14. The specification further provides that the indicator may "be displayed on a display associated with an article of clothing (e.g., coat or hat) worn by the driver and/or displayed on a remote hand-held display device (e.g., tablet computer) held by the driver." *Id*. at 3:14–19. The indicator "may be displayable as a 'code' (e.g., a text string or alphanumeric string), an icon, or other identifier," that is displayed "to enable the [passenger] to identify the vehicle that he/she has requested for a ride service." *Id*. at 4:5–10.

Claim 1 of the '987 Patent, which as further discussed below is representative of all claims of the asserted patents, recites:

> 1. A vehicle identification system, comprising:
>
> a display associated with a vehicle, wherein the display is located to be visible from an exterior of the vehicle by a rider;
>
> a controller communicatively coupled to a network and configured to, in response to receipt of a signal from a user, generate and transmit a first signal representing an indicator via the network to a mobile communication device associated with a driver of the vehicle; and
>
> wherein, in response to receiving the first signal, the mobile communication device associated with the driver of the vehicle generates and transmits a second signal representing the indicator to the display, the indicator identifies the vehicle.

D.I. 6-2 at 7:33–46.

## IV.    ARGUMENT

As explained below, the claims of the asserted patents are invalid under 35 U.S.C. § 101.

Additionally, the Complaint fails to plausibly assert an infringement claim for the '199 Patent.

### A.  The Claims of the Asserted Patents are Invalid Under 25 U.S.C. § 101

Laws of nature, physical phenomena and abstract ideas are not eligible for patenting under

35 U.S.C. § 101.  *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  "[P]atent eligibility

can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken

as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green*

*Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

> First, the court must determine whether the claims are drawn to a
> patent-ineligible concept. If the answer is yes, the court must look
> to the elements of the claim both individually and as an ordered
> combination to see if there is an inventive concept—i.e., an element
> or combination of elements that is sufficient to ensure that the patent
> in practice amounts to significantly more than a patent upon the
> [ineligible concept] itself.

*SynKloud Techs., LLC v. HP Inc.*, No. 19-1360-RGA, 2020 WL 5798725, at *2 (D. Del. Sept. 29,

2020) (internal citations and quotations omitted) (alteration in original).

### 1.  *Alice Step One*: the claims of the asserted patents are directed to the abstract idea of identifying a particular vehicle using visual indicators

The claims of the asserted patents are directed to the abstract idea of identifying a particular

vehicle using visual indicators.

Claims that can be implemented in a low-tech context or seek to cover organization of

human activity concern abstract ideas.  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d

1253, 1258 (Fed. Cir. 2016) (finding claims directed to an abstract idea where the claimed concept

"can be implemented in myriad ways ranging from the low-tech . . . to the high-tech"); *see also*

*SynKloud Techs.,* 2020 WL 5798725, at *5 ("Courts have also found that such claims are directed to longstanding practices of human organization.").  "In addressing the first step of the section 101 inquiry, as applied to a computer-implemented invention, it is often helpful to ask whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'"  *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (citation omitted).  Courts routinely look to analogous cases for guidance when determining whether a claim is abstract.  *See, e.g., Blackbird Tech. v. Uber Techs., Inc.*, No. 19-561 (MN), 2020 WL 58535, at *1 (D. Del. Jan. 6, 2020).

### a.   *The patented ideas have been implemented in low-tech contexts since vehicles existed, confirming their abstractness.*

The purported invention of the asserted patents—identifying a particular vehicle using visual indicators—has been performed by humans since vehicles have existed.  For example, drivers at airport pickup locations routinely hold signs displaying passengers' names or other visual indicators (hotel name, group ID, etc.) that distinguish vehicles in a crowded area.  Similarly, buses, trains and ferries display visual indicators in the form of a number or destination to guide passengers to the correct vehicle.  In more romantic settings, strangers use particular flowers pinned to lapels or a certain scarf color to meet in a crowded restaurant.

It has been commonplace for decades for a traveler to set up a car service for transportation upon arrival at a destination.  Once a traveler makes a reservation, via low-tech means such as a telephone, they are told to meet a driver at the airport holding a sign with an identifier such as the traveler's name.  Upon arrival, the traveler looks for a driver holding a sign with his or her name and can approach the driver with confidence that they have selected the correct driver.  The specification itself describes this scenario as one way in which the claimed indicator can be

displayed: "[t]he indicator may additionally, or alternatively, be displayed on a display associated with an article of clothing (e.g., coat or hat) worn by the driver and/or displayed on a remote hand-held display device (e.g., tablet computer) held by the driver."  D.I. 6-2 at 3:17–22.  The asserted patents claim this same abstract idea, implemented on generic computer technology as shown in the below side-by-side comparison:

| Claim Language (Representative Claim 1 of the '987 Patent) | Low-Tech Implementation |
| --- | --- |
| a display associated with a vehicle, wherein the display is located to be visible from an exterior of the vehicle by a rider; | paper held by driver or displayed in car window |
| a controller communicatively coupled to a network and configured to, in response to receipt of a signal from a user, generate and transmit a first signal representing an indicator via the network to a mobile communication device associated with a driver of the vehicle; and | dispatcher who tells driver the name of the passenger to pick up in response to a passenger's reservation using a telephone |
| wherein, in response to receiving the first signal, the mobile communication device associated with the driver of the vehicle generates and transmits a second signal representing the indicator to the display, the indicator identifies the vehicle. | driver writes the name of the passenger on the paper in the car window for the passenger to see upon arrival |

This low-tech analysis demonstrates the ineligibility of the asserted patents.  *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding an email processing software program to be abstract through comparison to a "brick-and-mortar" post office).

> ### b.  *The claims are similar to those that the Federal Circuit and district courts have found be directed to an abstract idea.*

Courts have found claims related to using identification labels ineligible as directed to abstract ideas.  *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017) (finding claims directed to using a marking on the outside of a mail object ineligible).  In *Secured Mail*, the Federal Circuit rejected arguments that markings on the outside of mail sufficiently improved reliability and bi-directional communication to make the claimed invention patent eligible, reasoning that the "method is not limited to any particular technology of generating,

printing, or scanning a barcode, of sending a mail object, or of sending the recipient-specific information over a network.  Rather, each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id*.  Here, the claims of the asserted patents are similarly abstract.  Even if the asserted patents improve identification of vehicles, just like the subject matter found ineligible in *Secured Mail*, they do so in an abstract way.  The claims of the asserted patents, just like those in *Secured Mail*, are "directed to the abstract process of communicating information about [a driver's vehicle] using a personalized [identification]." *Id*. at 911; *see also MacroPoint, LLC v. FourKites, Inc.*, No. 1:15 CV 1002, 2015 WL 6870118, at *1, *3 (N.D. Ohio Nov. 6, 2015) (holding abstract "a computer implemented method for indicating location of freight carried by a vehicle," despite claim reciting transmitting of data to communications devices and correlating the location information of the device to the location of the freight); *Concaten, Inc. v. Ameritrak Fleet Sols.*, 131 F. Supp. 3d 1166, 1170 (D. Colo. 2015) (finding claims for snow plow vehicle management directed to abstract idea where the claims included receiving information from snow maintenance vehicles, processing the information to generate a map and determine plowing instructions, and providing the instruction to the snow plow vehicles).

Another instructive case is *Trading Techs.*, which found claims "relat[ing] to displaying market information on a screen" invalid under Section 101.  *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1381 (Fed. Cir. 2019).  There, "[t]he claims considered in light of the specification [made] clear that 'the focus of the claimed advance over the prior art' is providing a trader with additional financial information to facilitate market trades, an abstract idea." *Id*. at 1384.  The claims were "focused on providing information to traders in a way that helps them process information more quickly" by displaying certain values on a prior art screen. *Id*.  The claims of

the asserted patents, like those in *Trading Tech.*, are directed to providing information (a visual indicator) to riders to help them more efficiently identify a particular vehicle. The specification makes this goal clear, stating that the invention relates to "provid[ing] an indicator . . . to allow the user to identify a vehicle prior to boarding the vehicle." D.I. 6-2 at 1:23–26.

Finally, a vehicle identification system with a generic "display," "controller," and "mobile communication device" is a "quintessential 'do it on a computer' patent" that is directed to an abstract idea. *See Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

### c. *The functional descriptions in the claims confirm their abstractness.*

That the claims are directed to an abstract idea is further demonstrated by the functional descriptions contained therein. A claim is abstract when there is "nothing in [the claim] that is directed to *how* to implement" the desired result. *Affinity Labs v. DIRECTV,* 838 F.3d at 1258. Here, each element is described only in terms of its end result, not the process by which such a result is achieved. The claims provide no information on how "the controller [is] communicatively coupled to a network and configured to, in response to receipt of a signal from a user, generate and transmit a first signal representing an indicator via the network to a mobile communication device associated with a driver of the vehicle" or how "the mobile communication device associated with the driver of the vehicle generates and transmits a second signal representing the indicator to the display." D.I. 6-2 at 7:37–46. Without any explanation of *how*, these elements simply describe the abstract goals of identifying a particular vehicle using visual indicators. *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016).

### 2. *Alice Step Two*: the claims of the asserted patents rely on well-understood, routine, and conventional activities

When claims are directed to an abstract idea, courts perform step two of the *Alice* analysis

and "consider the elements of each claim both individually and as an ordered combination" to determine "whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217, 221 (internal quotations omitted). The transformation of an abstract idea into patent-eligible subject matter "requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id*. at 221 (quoting *Mayo Collaborative Serv. v. Prometheus Lab., Inc.,* 566 U.S. 66, 72 (2012)) (alterations in original). A claim recites an inventive concept "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and quotation omitted) (alteration in original). As discussed below, the mere use of generic computing means to accomplish the long-known task of identifying a particular vehicle using visual indicators does not impart an inventive concept on the claims.

### a. *The patent lacks an inventive concept because it relies on generic components combined in generic ways.*

Using generic technology to perform conventional activities is insufficient to show an inventive concept. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Here, the patents identify only generic components—based on technologies others invented—in presenting the abstract idea. *See, e.g.*, D.I. 6-2 at 3:36–39 ("Embodiments of the presently-disclosed vehicle identification system can be implemented as software, hardware, firmware or any combination thereof."). The specification and claims of the asserted patents do not purport to invent any of the claimed "display," "controller," or "mobile communication device." Nothing is combined in a way that deviates from the "routine" and "conventional." *See Alice*, 573 U.S. at 225. The patents describe each of the claimed system components in terms of

well known, readily available components. The specification describes that "the term 'controller' may include any type of computing device, computation circuit, or any type of processor or processing circuit capable of executing a series of instructions that are stored in a memory associated with the controller", all previously well-known components.  D.I. 6-2 at 2:63–66. Similarly, the specification describes that "'mobile communication device' generally refers to any portable wireless device," and may include "one or more processors and memory capability"—all very generic components.  *Id*. at 2:66–3:3.  The specification does not provide any detail about the components that make up the "display," and instead provides examples including "an article of clothing (e.g., coat or hat) worn by the driver" and "a remote hand-held display device."  *Id*. at 3:19–22.  In reciting a series of conventional components, the asserted patents simply rely on standard technology in service of the abstract idea of identifying a particular vehicle using visual indicators.

The claims are merely directed to vehicle identification with alleged improved efficiency as a result of computer implementation—that is not enough for patentability under Section 101 of the Patent Act: using a computer "for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes."  *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278–79 (Fed. Cir. 2012) (distinguishing "improvements to computer technologies" (potentially patent eligible) from the use of computers to merely improve speed or efficiency (not patent eligible)).

### b.  *The claims are similar to those that the Federal Circuit and district courts have found to lack an inventive concept.*

Courts have previously recognized that claims like those in the asserted patents are directed to activities that are well-understood, routine, and conventional.  In *Apple v. Ameranth*, the claims related to the abstract idea of generating and transmitting menus with certain features in the

restaurant context, and the claimed system included, *inter alia*, a "data storage device," a "central processing unit," and similar elements.  842 F.3d 1229, 1241 (Fed. Cir. 2016).  In affirming the lack of inventive concept determination, the Federal Circuit determined that "[t]he claimed invention replaces a server's notepad or mental list with an electronic device . . . [t]he invention merely claims the addition of conventional computer components to well-known business practices," failing step two of the inquiry.  *Id.* at 1242.

Similarly, in *Content Extraction*, the court found claims reciting collecting bank check scans, recognizing certain financial data within the check images data set, and storing the recognized data in a memory, directed to an abstract idea at step one: the "concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions."  *Content Extraction and Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  At step two, the Federal Circuit found the claims contained no limitations that transformed them into patent-eligible subject matter because the technological implementation (scanning to extract data) was well-known.  *Id.* at 1348.  "There [wa]s no 'inventive concept' in [the claims'] use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."  *Id.*

Here, too, the claims seek to cover the use of generic technology—e.g., a "controller," a "mobile communication device," and a "display"—to do what humans have long done: identify a particular vehicle using visual indicators.  The narrowing of the implementation, e.g., by the dependent claims, does not make the claims any more patent eligible—they are still directed to the abstract idea of identifying a particular vehicle using visual indicators, implemented through generic information processing.  For example, even where the indicator is "an alphanumeric string," the indicator is transmitted to a mobile communication device associated with the driver—

the claims remain directed to identifying a particular vehicle using visual indicators. *See, e.g.,* D.I. 6-2 at claims 2–7; *see supra* Section IV.A.3.

In *Electric Power*, the Federal Circuit also found claims patent ineligible where:

> the claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications. The claims at issue do not require any nonconventional computer, network, or display components, or even a "non-conventional and non-generic arrangement of known, conventional pieces," but merely call for performance of the claimed information collection, analysis, and display functions "on a set of generic computer components" and display devices.

830 F.3d at 1355. Here, as in *Electric Power*, the claims do not require any nonconventional computer, network, or communication components, or a non-conventional arrangement of them.

### c. The lack of an inventive concept is demonstrated by the generality of claims.

The level of generality of the claims belies any argument that they reflect an inventive concept. The Federal Circuit has recognized this tendency in patents that claim ineligible subject matter, acknowledging that "the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101 . . . ." *Elec. Power Grp.*, 830 F.3d at 1356. Here, the claims are non-specific and result-focused, including a "controller," and "mobile communication device" that transmit signals and a generic "display" that displays an indicator, without detail of how this is done. D.I. 6-2 at 7:33–46. These elements are entirely focused on the hoped-for result, but lack any information or structure about how actually to accomplish those results. This generality is consistent through both the independent and dependent claims (none of which are identified in the complaint). For example, some dependent claims require that the controller transmits the indicator to a mobile communication device associated with the user, while others specify that the mobile communication device associated with the driver transmits the indicator to a mobile communication device associated with the user. *See, e.g.*, D.I.

6-2 at claims 2–3.  Other dependent claims require that the system include a transceiver that receives and transmits signals, require that the system include a panic button, require that the identifier is an alphanumeric string, or require that the identifier is *not* an alphanumeric string— these are all generic components that do not lend themselves to patentability and are all "result-focused, functional . . . claim language" that fails to transform the abstract idea into eligible subject matter.  *See, e.g.*, D.I. 6-2 at claims 4–7; *Elec. Power Grp.*, 830 F.3d at 1356; *see also* Section IV.A.3.b (regarding the claimed "transceiver").

The fact that the asserted patents are silent on concepts necessary to the functioning of the claimed system further demonstrates that it is merely the recitation of the abstract idea, which is not patentable, as opposed to an improvement to computer technology.  *See, e.g.*, *Bancorp Servs.*, 687 F.3d at 1278.  For example, neither the claims nor the specification contains an explanation of how the system performs the function of information gathering, transmission, or display, nor is there any algorithm or other information provided to explain how this is accomplished.  There is no inventive concept in patenting "the abstract idea of a solution to the problem in general," as opposed to "patenting a particular concrete solution to a problem."  *Elec. Power Grp.*, 830 F.3d at 1356.

Because the claims of the asserted patents are directed to the abstract idea of identifying a particular vehicle using visual indicators, and because the claims do not include an inventive concept, they are unpatentable under Section 101 of the Patent Act.

### 3.   Claim 1 of the '987 Patent is representative of all claims of the asserted patents

RSDI's Complaint specifically accuses Lyft of infringing only claim 1 of each asserted patent.  D.I. 6 at ¶¶ 175–178, 186–189, 197–199, 208–211, 220–223.  Understanding, however, that RSDI may attempt to assert infringement of additional claims at a later time, Lyft is challenging herein the validity of every claim of the asserted patents.

Claim 1 of the '987 Patent is representative of the claims of the asserted patents, and any differences between claim 1 of the '987 Patent and the other claims do not veer from the common abstract concept of identifying a particular vehicle using visual indicators.[1]   The Court may therefore rely on an analysis of a representative claim—here claim 1 of the '987 Patent—in deciding whether all the claims of the asserted patents are directed to an abstract idea and include an inventive concept.  *Content Extraction*, 776 F.3d at 1348 (affirming invalidity of four patents based on Section 101 with analysis of two representative claims); *Natera, Inc. v. ArcherDX, Inc.*, No. 20-125-LPS, 2020 WL 6043929, at \*4 (D. Del. Oct. 13, 2020) (treating one patent claim as representative of claims in three asserted patents); *Fast 101 Pty Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 388 (D. Del. 2020) (finding "claim 1 of the '867 patent as representative of the other claims in the Asserted Patents" because "all of the independent claims of the remaining patents recite the same concept as described in the '867 patent, and the dependent claims offer only minor, non-technical variations"); *Fast 101 Pty Ltd. v. CitiGroup Inc.*, No. 2020-1458, 2020 WL 6947911, at \*1 (Fed. Cir. Nov. 25, 2020) ("Claim 1 of the '867 patent is representative of all 234 asserted claims.").

### a.   The '987 Patent claims

The '987 Patent includes five independent claims: claims 1, 8, 9, 13, and 17.  Claims 8, 9, 13, and 17 are directed to substantially the same abstract limitations of claim 1 of the '987 Patent and merely add trivial limitations.  Claim 8 requires that the indicator be displayed on each of the display, the user's mobile communication device, and the driver's mobile communication device; claim 9 requires that the display is adapted to be worn by the driver; claim 13 requires a panic button; and claim 14 requires a panic button and that the indicator be displayed on each of the

---

[1] Exhibit A shows the claims of the asserted patents and identifies common limitations across the asserted patents.

display, the user's mobile communication device, and the driver's mobile communication device. The display of an indicator or use of a panic button add "'well-known, routine, and conventional functions' [and] d[o] not transform the abstract idea into a patentable invention." *Affinity Labs v. DIRECTV*, 838 F.3d at 1264 (citation omitted).  Accordingly, claims 8, 9, 13, and 17 are still directed to the abstract idea of identifying a particular vehicle using visual indicators, implemented through generic information processing.  The dependent claims, shown in Exhibit A, do not add anything that would save those claims from invalidity under Section 101.  *See Fast 101*, 424 F. Supp. 3d at 388 (finding "claim 1 of the '867 patent as representative of the other claims where "the dependent claims offer only minor, non-technical variations").

### b.  The '637 Patent claims

Claim 1 of the '637 Patent recites substantially similar abstract limitations as claim 1 of the '987 Patent, with the addition of the recitation of a transceiver, which neither saves the claims from being abstract nor does it provide an inventive addition.  First, the addition of a "transceiver" does not change the abstract nature of the invention claimed therein.  The transceiver is simply a functionally claimed component coupled to the controller to transmit a signal: where claim 1 of the '987 Patent recites "a controller communicatively coupled to a network and configured to . . . generate and transmit a first signal," claim 1 of the '637 Patent recites "a controller communicatively coupled to the transceiver, wherein the controller is adapted to generate a first signal to be transmitted by a the transceiver." *Compare* D.I. 6-2 at 7:36–40 *with* D.I. 6-1 at 7:33–35.  Second, the addition of a transceiver does not provide an inventive concept because the transceiver is a generic computer component.  Indeed, the specification of the '637 Patent provides that "[t]he transceiver . . . may consist of one or more cell phone towers of a tower network," "satellites instead of land-based cell towers," or "**any device capable of wireless communication**

with a mobile communication device … associated with the driver D and/or a mobile communication device associated with the user P."  D.I. 6-1 at 3:63–4:3 (emphasis added).

The other independent claims of the '637 Patent, claims 9 and 13, are directed to substantially the same abstract idea as claim 1 of the '637 Patent and claim 1 of the '987 Patent. Claims 9 and 13 add the requirement that the indicator is also transmitted to a mobile communication device associated with a user, and claim 9 adds that the user identifies the vehicle based on a visually matching the indicator on the user's mobile communication device with that displayed on the vehicle.  The additional limitations recited in claims 9 and 13 fail to transform the abstract idea because they simply elaborate on the same abstract idea with additional steps that may be used to identify a vehicle, and therefore indicate ineligibility.  *See, e.g., Affinity Labs v. DIRECTV*, 838 F.3d at 1264 (claims that add well-known, routine, and conventional functions do not transform an abstract idea into patentable invention).

Similarly, the dependent claims of the '637 Patent offer only minor, non-technical variations on claim 1 which do not save the claims from patent ineligibility.  *See Fast 101 Pty*, 424 F. Supp. 3d at 388.  For example, claim 2 requires that the indicator is receivable by a rider's mobile communication device, claim 3 requires that an application on the rider's mobile communication device can display the indicator, claim 4 requires that the indicator is transmitted to the rider's mobile communication device, claim 5 requires that the indicator is an alphanumeric string, claim 6 specifics that the transceiver is composed of at least one cell phone tower, claim 7 specifies that the controller is a computer network controller, and claim 8 specifies that the that the controller is a server—none of these are anything but "result-focused, functional . . . claim language," that fail to transform the abstract idea and therefore indicates ineligibility.  *See Elec. Power Grp.*, 830 F.3d at 1356.

### c. *The '525 Patent claims*

Claim 1 (the sole claim) of the '525 Patent recites substantially similar abstract limitations as claim 1 of the '987 Patent, with the additional requirement that "a second signal representing the indicator . . . is transmitted to a mobile communication device that is associated with [a] rider." D.I. 6-3 at 8:8–23.  Expressly requiring the visual indicator to be transmitted to a user's mobile device reinforces the abstract nature of the invention: identifying a particular vehicle using visual indicators.  Further, the additional requirement of claim 1 of the '525 Patent is achieved by a second "mobile communication device," a generic computer component.

### d. *The '417 Patent claims*

Claim 1 of the '417 Patent is substantially similar to claim 1 of the '525 Patent, with the additional requirement that "the visual indicator is not duplicated in the same pickup area."  D.I. 6-5 at 8:12–14.  This requirement simply reinforces the common abstract idea of identifying a *particular* vehicle using a visual indicator that is unique to that vehicle. Further, this limitation is not a concrete technical improvement over the claims of the '987 Patent.

The four dependent claims of the '417 Patent offer only minor, non-technical variations on claim 1.  *See Fast 101 Pty*, 424 F. Supp. 3d at 388.  For example, claim 2 requires that the indicator is generated and transmitted by the mobile device associated with the driver, claim 3 requires that the indicator is generated and transmitted by the controller, claim 4 requires that the indicator is generated and transmitted by both the mobile device associated with the driver and the controller, and claim 5 requires that the visual indicator is a code, a text string, an alphanumeric code, or an icon.  None of these limitations are anything but "result-focused, functional . . . claim language," that fails to transform the abstract idea and therefore indicates ineligibility.  *See Elec. Power Grp.*, 830 F.3d at 1356.

e.  *The '199 Patent claims*

Finally, claim 1 of the '199 Patent is the only independent method claim asserted in the Complaint.  Claim 1 of the '199 Patent requires the same limitations as claim 1 of the '525 Patent, and additionally requires "identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the user's mobile communication device and the indicator being displayed on the display associated with the vehicle."[2]  D.I. 6-4 at 7:31–8:14.  This requirement makes clear that claim 1 of '199 Patent, like the claims of the other asserted patents, is directed to the abstract idea of identifying a particular vehicle using visual indicators and provides one way that a user may identify the requested vehicle: by looking for the indicator the user expects to see to find "a match" displayed on a particular vehicle.  Furthermore, the requirement of "identifying the vehicle . . . *by visual observation of a user*" is not a concrete technical improvement over the abstract idea.

The only dependent claim of the '199 Patent offers only a minor, non-technical variation on claim 1.  *See Fast 101 Pty*, 424 F. Supp. 3d at 388.  Claim 2 requires "identifying the user based on appearance of a match, by visual observation of the driver" using the indicator displayed on the mobile devices associated with the driver and the user.  Again, this limitation is simply "result-focused, functional . . . claim language" that fails to transform the abstract idea and therefore indicates ineligibility.  *See Elec. Power Grp.*, 830 F.3d at 1356.

---

[2] That claim 1 of the '525 Patent is a system claim and claim 1 of the '199 Patent is a method claim is not a meaningful difference for purposes of evaluating whether one claim is representative of the other.  *See SmileDirectClub, LLC v. Candid Care Co.*, No. 20-0583-CFC, 2020 WL 7190797, at *5 (D. Del. Dec. 7, 2020) (claims can be considered together for the purpose of subject matter eligibility under § 101 where the claims differ from each "only insofar as [one claim] describes the claimed workflow as a system as opposed to a method.").

**B.  The Complaint Fails to Plausibly Allege Direct Infringement of the '199 Patent**

To withstand a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, the Complaint does not meet this standard because it includes no factual allegations plausibly demonstrating that Lyft itself practices any claim of the '199 Patent, or that the acts of a third party are attributable to Lyft such that a single entity is responsible for alleged infringement of the '199 Patent, as required by law.  The '199 Patent contains two claims: 1 independent claim and 1 dependent claim.  The below illustration demonstrates how multiple actors are required to perform the elements of method claim 1:



'199 Patent, Claim 1

Direct infringement of a patented method claim can only "occur[ ] where all steps of [the] claimed method are performed by or [are] attributable to a single entity."  *Akamai Techs., Inc. v.*

*Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*).  "Where more than one actor is involved in practicing the steps [of a method claim], a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id*.  An entity is "responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."  *Id*.  A plaintiff can sufficiently plead that a defendant directs or controls another's performance of the claimed method if it demonstrates that the defendant: (1) "conditions participation in an activity or receipt of a benefit upon others' performance of one or more steps of [the] patented method"; and (2) "establishes the manner or timing of that performance." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 330515, at *1 (D. Del. Jan. 25, 2019) (internal quotation marks and emphasis omitted).

 The allegations in the Complaint do not clearly identify what entity RSDI contends practices the "identifying" step—Lyft, a driver, or a rider—let alone clearly identify that this step is attributable to the same entity as the other steps.  Instead, the Complaint alleges vaguely that (1) the method recited in claim 1 of the '199 Patent "includes the step of identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the user's mobile communication device (via the Lyft App) and the indicator being displayed on the Amp display associated with the vehicle;" (2) "[t]he Accused Products, including the Lyft Apps, Lyft communication platform, and Lyft Amp are designed and controlled by Lyft;" and (3) "[t]he use of the Accused Products is directed, induced and controlled by Lyft."  Complaint at ¶¶ 159–160.

 Critically, the Complaint fails to allege that Lyft itself performs the "identifying" step, that Lyft directs or controls a rider to "identify[] the vehicle based on appearance of a match," or that

Lyft and the rider form a joint enterprise.  RSDI alleges, without factual support untethered to claim language, that Lyft "conditions its drivers' use of Lyft's transportation services network upon the performance of the steps performed by the Driver App, "establishes the manner and timing of its drivers' performance," "conditions passengers' use of its transportation services network upon the performance of the steps performed by Rider App," and "establishes the manner or timing of the passengers' performance. . . ."  Complaint at ¶¶ 126–127.

These allegations attempt to inject the requisite legal standard to show "direction and control" by Lyft, but wholly fail to identify which method step(s) of the '199 Patent are performed by the rider, the driver, and/or Lyft such that a single entity is responsible for the alleged infringement.  The plain language of claim 1 of the '199 Patent requires "identifying the vehicle based on appearance of a match, ***by visual observation of the user.***"  The Complaint does not and cannot allege that Lyft requires riders to visually observe indicators displayed on vehicles and on rider devices to identify a match.  Lyft riders are free to observe (or not observe) what they choose, including using the license plate number or the name of the rider or driver to confirm the requested vehicle.  Lyft is not in control of those actions.

Because the Complaint fails to sufficiently allege that Lyft performs each and every method step of claim 1 of the '199 Patent, or that acts of a third party are attributable to Lyft such that a single entity is responsible for the alleged infringement of claim 1 of the '199 Patent, RSDI's infringement allegations for the '199 Patent should be dismissed.

## V.    CONCLUSION

The Court should grant Lyft's motion to dismiss and determine that: (1) the claims of the asserted patents are unpatentable under 35 U.S.C. § 101; and (2) the Complaint fails to plausibly allege infringement of the '199 Patent.

ASHBY & GEDDES

/s/ *John G. Day*

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

*Of Counsel:*

Jennifer C. Tempesta
Baker Botts L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, NY  10112-4498
(212) 408-2500

Jeremy J. Taylor
Baker Botts L.L.P.
101 California Street, Suite 3600
San Francisco, CA 94111
(415) 291-6200

Dated: February 9, 2021