# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RIDESHARE DISPLAYS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. No. 20-1629-RGA-JLH |
| LYFT, INC., | ) ) |
| Defendant. | ) ) ) |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Lyft, Inc.'s Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 14.) As announced at the hearing on June 10, 2021, I recommend that the Court DENY Lyft, Inc.'s motion without prejudice to Lyft's ability to raise its 35 U.S.C. § 101 arguments at the summary judgment stage.

## I. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550

U.S. at 557).

In determining the sufficiency of the complaint, I must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

B.  **Patent Eligibility Under 35 U.S.C. § 101**

Section 101 defines the categories of subject matter that are patent eligible. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized three exceptions to the broad statutory categories of patent-eligible subject matter: "laws of nature, natural phenomena, and abstract ideas" are not patent-eligible. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). "Whether a claim recites patent-eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

The Supreme Court has established a two-step test for determining whether patent claims are invalid under 35 U.S.C. § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). In step one, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. This first step requires the court to "examine the 'focus' of the claim, i.e., its 'character as a whole,' in order to determine whether the claim is directed to an abstract idea." *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 736 (D. Del. 2018) (Bryson, J.) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

2

Because "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012), "courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at [too] high [a] level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016). If the claims are not directed to a patent-ineligible concept, then the claims are patent-eligible under § 101 and the analysis is over. If, however, the claims are directed to a patent-ineligible concept, then the analysis proceeds to step two.

At step two, the court "consider[s] the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (internal quotations and citations omitted). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI Commc'ns*, 823 F.3d at 613. Thus, "[m]erely reciting the use of a generic computer or adding the words 'apply it with a computer'" does not transform a patent-ineligible concept into patent eligible subject matter. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329,

1338 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 223). Nor is there an inventive concept when the claims "[s]imply append[ ] conventional steps, specified at a high level of generality" to a patent ineligible concept. *Alice*, 573 U.S. at 222.

Conversely, claims pass muster at step two when they "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (citation and internal marks omitted). "The mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional." *Id.* at 1369. Moreover, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2019). Whether an activity was well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

## II. DISCUSSION

My report and recommendation regarding the pending motion was announced from the bench at the conclusion of the hearing as follows:

> This is my report and recommendation on the pending motion to dismiss for failure to state a claim in *RideShare Displays, Inc. v. Lyft, Inc*. That's [Civil Action] Number 20-1629. The motion is at Docket Number 14.
>
> I have reviewed the parties' briefing on the motion as well as their supplemental 101-day letters.[1] I've also carefully considered the argument[s] that the parties made this morning at the hearing. I will summarize the reason[s] for my recommendation [in a moment], but before I do, I want to be clear that my failure to address [a] particular argument[ ] does not mean that I did not consider it. I also note that, while we will not be issuing a separate,

---

[1] (D.I. 15, 17, 20, 39, 40.)

4

written recommendation, we will issue a written document incorporating the recommendation I'm about to make.

For the following reasons, I recommend that the Court deny Lyft's motion to dismiss without prejudice to Lyft's ability to renew its § 101 arguments at the summary judgment stage.

[Background]

RSDI filed this suit for patent infringement on November 30, 2020, and, shortly thereafter, filed its first amended complaint.[2] RSDI's amended complaint asserts five patents against Lyft. All five are entitled "Vehicle Identification System," and they all have the same specification.[3] There are a total of 45 claims across the five patents.

On February 9, 2021, Lyft moved to dismiss the FAC.[4] Lyft contends that every claim of each of the five patents in suit [is] directed to patent-ineligible subject matter and, therefore, is unpatentable under 35 U.S.C. § 101 and the Supreme Court's decision in *Alice*.[5] [Lyft also contends that the FAC fails to plead facts sufficient to state a claim for infringement of the '199 Patent.]

[Discussion]

I'm not going to read into the record the law that applies to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or the law that applies to the Court's assessment of validity under § 101. I previously set forth the applicable legal standards in another report and recommendation, *CoolTVNetwork.com v. Facebook*.[6] I incorporate those legal standards by reference and hereby adopt them into my report.

---

[2] (D.I. 1, 6.)

[3] The asserted patents are U.S. Patent. Nos. 9,892,637 ("'637 Patent"), 10,169,987 ("'987 Patent"), 10,395,525 ("'525 Patent"), 10,559,199 ("'199 Patent"), and 10,748,417 ("'417 Patent").

[4] (D.I. 14.)

[5] *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

[6] *See CoolTVNetwork.com v. Facebook, Inc.*, C.A. No. 19-292-LPS-JLH, 2019 WL 4415283 at *3, *10-11 (D. Del. Sept. 16, 2019).

5

**[Invalidity Under § 101]**

Starting with the 101 argument, I conclude that Lyft's 101 motion should be denied without prejudice to Lyft's ability to re-raise invalidity under § 101 at the summary judgment stage. I reach this conclusion for three independent reasons.

First, as a threshold matter, I'm unpersuaded by Lyft's assertion that it is appropriate at this stage to treat claim 1 of the '987 Patent as representative such that all of the claims rise and fall with that claim.[7] As I mentioned, there are [a] total of 45 claims across the five asserted patents. After carefully reviewing the claims, I agree with RSDI that claim 1 of the '987 Patent is not necessarily representative of all of the claims of all of the patents.

[As] one example, some of the claims additionally require that the controller [ ] transmit an indicator signal to a mobile device associated with a rider, which, as the specification explains, can allow the driver to verify that he or she is picking up the correct rider.[8] As another example, some claims also require that the indicator signal be transmitted from the controller only when the rider and driver are within a predetermined distance of one another.[9]

---

[7] Claim 1 of the '987 Patent reads:

1. A vehicle identification system, comprising:
a display associated with a vehicle, wherein the display is located to be visible from an exterior of the vehicle by a rider;
a controller communicatively coupled to a network and configured to, in response to receipt of a signal from a user, generate and transmit a first signal representing an indicator via the network to a mobile communication device associated with a driver of the vehicle; and
wherein, in response to receiving the first signal, the mobile communication device associated with the driver of the vehicle generates and transmits a second signal representing the indicator to the display, the indicator identifies the vehicle.

[8] *See, e.g.*, '637 Patent, claim 13 (controller generates signals which are transmitted to mobile communication devices associated with the driver and user); *id.* at 5:61-65 ("Once the user P has identified the vehicle 20, the user P may be requested to show the indicator 111 displayed on his/her mobile communication device 140 to the driver D, e.g., to allow the driver D to verify that he/she is picking up the person who actually requested the ride service.").

[9] *See, e.g.*, '637 Patent, claim 1; '199 Patent, claim 1.

As I will explain in a minute, I agree with RSDI that it would be inappropriate at this stage of the case to conclude, as a matter of law, that all of the claimed arrangements are generic and conventional. Accordingly, I cannot conclude at this stage of the case that claim 1 of the '987 Patent is representative of all of the claims in the asserted patents.

Moving to *Alice* step one, I'm not persuaded at this stage of the case that all of the claims are directed to an abstract idea, and that is the second reason that I recommend denying the motion to dismiss.

At step one of the *Alice* inquiry, I must "examine the 'focus' of the claim, i.e., its 'character as a whole,' in order to determine whether the claim is directed to an abstract idea."[10] Lyft asserts that all of the claims are directed to the abstract idea of "identifying a particular vehicle using visual indicators."[11]

As an initial matter, I am concerned that Lyft has done what the Federal Circuit has cautioned against: its description of the focus of the claims is at too high a level of abstraction and is "untethered from the language of the claims."[12] While there is no dispute that all of the claims are [ ] directed to systems and methods for vehicle identification, the claim language does contain some detail about the manner in which those vehicles are identified.[13]

In particular, most of the claims require the communication of an indicator by a separate controller to mobile devices associated with the driver and the display of that indicator on the exterior of the vehicle where it can be viewed by the rider so that they can verify they are getting into the correct vehicle. Some claims additionally require that the controller also generate a signal to be sent to the passenger which the driver can use to verify that he or she is picking up the correct rider. [Moreover,] the specification suggests that, prior to the patented invention, there was a need to improve rider

---

[10] *Epic IP*, 351 F. Supp. 3d at 736.

[11] (D.I. 15 at 3.)

[12] *Enfish*, 822 F.3d at 1337.

[13] *Cf. Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018) (claim covering a "particular manner of summarizing and presenting information in electronic devices" was not directed to an abstract idea).

7

and driver security and that the claimed invention, with a separate controller that sends a verification signal to the driver and the rider, is a solution to that problem.[14]

Thus, at this point in the case, I'm unpersuaded that all 45 claims are only directed to the abstract idea of "identifying a particular vehicle using visual indicators."[15] However, I cannot say on this record that the claims are not directed to one or more other abstract ideas yet to be articulated. Accordingly, I recommend that Lyft be given a chance to re-raise its step one arguments at the summary judgment stage.

Before I leave step one, I have a couple of other comments. At this stage in the development of § 101 law, it is widely acknowledged that there is no single, comprehensive definition of what is an abstract idea and that determining which claims are directed to abstract ideas and which are not has not proved to be a simple task. The Federal Circuit has indicated that it is thus also [ ] useful [ ] at step one to compare the claims at issue to claims that have been considered in other decisions.[16]

Accordingly, I also compared the claims at issue in this case to several lines of cases in which the Federal Circuit found claims to be abstract ideas. Judge Bryson, sitting as a District Court Judge in our district, summarized three of those lines of cases in his opinion in *Epic v. Backblaze*.[17]

One line of cases, including *Alice*, holds that "method[s] of organizing human activity," such as fundamental economic

---

[14] *See, e.g.*, '987 Patent, 1:59-61.

[15] *Cf. Mod Stack LLC v. Aculab, Inc.*, No. 18-332-CFC, 2019 WL 3532185, at *4 (D. Del. Aug. 2, 2019) (denying motion to dismiss under § 101 when the defendant's articulation of the abstract idea was oversimplified); *3G Licensing, S.A. v. HTC Corp.*, No. 17-83-LPS, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) ("While it may be possible that claim 1 could be accurately characterized as directed to some abstract idea, all I need to decide today [at the motion to dismiss stage] is that the claim is not directed to the abstract idea articulated by defendant."); *Groove Dig., Inc. v. Jam City, Inc.*, No. 18-1331-RGA, 2019 WL 351254, at *3 (D. Del. Jan. 29, 2019) (denying motion to dismiss under § 101 without prejudice to renew the issue on summary judgment when the defendant's proposed abstract idea did not "satisfactorily capture the substance of the claims").

[16] *See Enfish*, 822 F.3d at 1334.

[17] 351 F. Supp. 3d at 737-740.

practices, are unpatentable.[18] I am not persuaded that this case is like those cases.

A second line of cases, including *Enfish* and *Core Wireless*, draws the distinction between claims that are directed to an improvement in computer technology and claims that use a computer to perform typical computer tasks.[19] But the distinctions drawn in that line of cases, in my view, are most appropriately applied to inventions directed to computer applications and software. The asserted patents here are not directed solely to a computer application but to a method implemented using computer technology.

A third line of cases, including *Interval Licensing* and *Intellectual Ventures* [ ], asks whether a claim lists functions with general terms rather than reciting a specific means of achieving the claimed function.[20] Whether the claims here fall under this line of cases is a closer question. Indeed, this case has, as Lyft suggests, similarities to the claims in *Secured Mail* that the Federal Circuit found were directed to an abstract idea.[21] As in *Secured Mail*, the claims here have steps that are not limited by rules as to how those steps are achieved. I also think that the claims here have similarities to the *Bascom* case relied on by RSDI insofar as there is a credible argument that the invention itself is directed to how certain conventional elements are arranged, notwithstanding [that] the Federal Circuit in *Bascom* stated that the claims there did not "readily lend themselves to a step-one finding that they are directed to a nonabstract idea."[22]

In sum, I do think that it is a close question. However, even if I agreed with Lyft that every single one of the claims was directed to an abstract idea, the motion should still be denied at step two.

---

[18] *Alice Corp.*, 573 U.S. at 220-21.

[19] *See Enfish*, 822 F.3d at 1326; *Core Wireless*, 880 F.3d at 1361-63.

[20] *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017).

[21] *See Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017).

[22] *See Bascom*, 827 F.3d at 1349.

[B]efore I leave step one, I footnote this final comment. The systems and methods recited by the claims here incorporate various tangible components, and while I'm mindful of the Federal Circuit's warning that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea, I'm also mindful of the Supreme Court's statement that the machine or transformation test, while not the sole test, "is a useful and important clue, an investigative tool, for determining whether some claimed inventions" satisfy § 101.[23] And the machine or transformation test appears to be satisfied here.

I will now turn to step two of *Alice*. Even if I were to assume that every claim is directed to an abstract idea, I conclude that there are disputes of fact that preclude a holding at step two that the claims lack an inventive concept.

In the prehearing letters to this Court, the parties analogized the claims of the asserted patents to other claims assessed by the Federal Circuit. Lyft argues that the claims at issue here are most like the claimed mail identification systems found ineligible under § 101 in *Secured Mail*.[24] RSDI argues that the claims are most like the internet filtering system that survived a motion to dismiss in *Bascom*.[25]

The claims here have similarities to both cases, but I ultimately agree with RSDI that *Bascom* prevents the Court from concluding, as a matter of law, that the claims here lack an inventive concept. *Bascom* reiterated the principal that an inventive concept can be found in the "non-conventional and non-generic arrangement of known, conventional pieces."[26] The invention at issue in *Bascom* was a system for filtering internet sites. Each of the individual limitations were alleged to be known generic components. There, the Federal Circuit concluded that, notwithstanding that filtering internet concepts was a known concept, an arrangement where the filtering list was located on a remote server instead of on local

---

[23] *Bilski v. Kappos*, 561 U.S. 593, 604 (2010).

[24] (D.I. 40 at 2.)

[25] (D.I. 39 at 2-3.)

[26] *Bascom*, 827 F.3d at 1350.

10

hardware could not be said, as a matter of law, to have been conventional or generic.[27]

In this case, RSDI conceded during the argument today that the individual elements of the claims are all generic components.[28] Nevertheless, I agree with RSDI that, like in *Bascom*, there remains at least a dispute of fact about whether the claimed arrangement of those known, conventional pieces is sufficiently "non-conventional and non-generic" to provide an inventive concept.

For example, I cannot say on this record that having an arrangement with an externally located controller that separately communicates the indicator signal to both the driver's and the rider's mobile devices is, as a matter of law, conventional or generic. Moreover, Plaintiff's first amended complaint, which I must take as true at this stage, alleges that the claimed arrangement of generic components is not routine [or] conventional and that the claimed invention solves a known problem with ridesharing safety with "a unique and previously unknown and non-conventional solution."[29]

Accordingly, I recommend that Lyft's motion be denied for the separate and independent reason that there is a dispute of fact as to whether the claims include an inventive concept at step two of the *Alice* inquiry.[30]

---

[27] *Id.* at 1352.

[28] June 10, 2021, Hearing Tr. at 27:24-28:6.

[29] (D.I. 6 ¶¶ 172, 183, 194, 205, 216.)

[30] I do not reach RSDI's argument that Lyft is estopped from asserting that the claims are ineligible based on statements Lyft allegedly made to the PTO during the prosecution of U.S. Patent No. 10,636,108.

**[Infringement of the '199 Patent]**

Finally, Lyft contends that the FAC fails to plausibly allege that Lyft infringes claim 1 of the '199 Patent. In particular, Lyft argues that the complaint fails to allege that it controls a third party that performs all of the method steps of claim 1 of the '199 Patent, including the step of "identifying the vehicle based on appearance of a match, by visual observation of the user."[31]

RSDI contends that it has pleaded that Lyft controls the performance all of the method steps by its drivers and riders. I agree with RSDI that it has adequately pleaded that Lyft conditions the use of its rideshare service on the performance of each of the claimed method steps.

With respect to the identifying [step], the complaint alleges that "[u]nder Lyft's design and control, a rider application ... is provided that, among other things, provides Lyft's passengers/ customers, a method by which to identify a particular vehicle operated by a Lyft driver."[32] The complaint further alleges that

---

[31] Claim 1 of the '199 Patent reads:

1. A vehicle identification method implemented as an Application on mobile communication devices over a wireless communication network, comprising:
requesting a ride from a transportation service from a mobile communication device of a user;
determining that a vehicle is within a predetermined distance of the location of the user;
generating a notification signal to a mobile communication device associated with a driver of the vehicle;
generating an indicatory signal representing an indicator;
displaying the indicator based on the notification signal on a display associated with the vehicle, the mobile communication device associated with the driver, and the user's mobile communication device, wherein the display associated with the vehicle is located to be visible from the exterior of the vehicle; and
identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the user's mobile communication device and the indicator being displayed on the display associated with the vehicle.

[32] (D.I. 6 ¶ 124.)

> "[Lyft] conditions passengers' use of its transportation services network upon the performance of the steps performed by the Rider App, and Lyft establishes the manner or timing of the passengers' performance."[33] I do not think that RSDI is required to [say] more to state a claim for infringement of claim 1 of the '199 Patent.[34]

**[Conclusion]**

To sum up, for the reasons I discussed, I recommend that the Court deny Lyft's motion to dismiss. That concludes my report and recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: July 12, 2021

_____
THE HONORABLE JENNIFER L. HALL
UNITED STATES MAGISTRATE JUDGE

---

[33] (*Id.* ¶ 127.)

[34] *Cf. Akamai Techs., Inv. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc) (holding that "liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance").

13