IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RIDESHARE DISPLAYS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | C.A. No. 20-cv-01629-RGA-JLH |

## **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 72 OBJECTIONS TO THE JULY 12, 2021 REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (D.I. 46)**

R. Karl Hill (DE2747)
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899
(302) 888-7604
khill@svglaw.com

*Attorneys for Plaintiff*

*Of Counsel:*

Michael J. Kasdan, Esq.
Joseph M. Casino, Esq.
Wiggin and Dana LLP
437 Madison Avenue – 35th Floor
New York, New York 10022

August 09, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

    I.    APPLICABLE LAW ........................................................................................... 1

    II.    FACTUAL BACKGROUND ............................................................................. 2

    III.    ARGUMENT ....................................................................................................... 3

        A.    Lyft Fails to Show Claim 1 is Representative of all Claims ............................... 3

        B.    The RSDI Patents Claim Patent-Eligible Inventions Because The Claims Are Not Directed To An Abstract Idea ................................................................ 4

        C.    RSDI's Pleading Is Sufficient To Establish An Inventive Concept, Precluding Dismissal At This Stage. ................................................................. 8

    IV.    CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

                                                                                               **Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ..................................................................................................1, 4, 6

*Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*,
   569 U.S. 576 (2013) ..............................................................................................................4

*Axcess Int'l, Inc. v. Genetec (USA) Inc.*,
   375 F. Supp. 3d 533 (D. Del. 2019) ....................................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) .......................................................................................8, 9

*Berkheimer v. HP Inc*,
   881 F.3d 1360 ...................................................................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ...........................................................................................8

*EcoServs., LLC v. Certified Aviation Servs., LLC*,
   830 F. App'x 634 (Fed. Cir. 2020) .....................................................................................7

*Immersion Corp. v. Fitbit, Inc.*,
   2018 WL 1156979 (N.D. Cal. Mar. 5, 2018) ..................................................................5, 6

*Ironworks Patents, LLC v. Apple Inc.*,
   No. CV 17-1399-RGA, 2018 WL 2944475 (D. Del. June 12, 2018) ..................................5

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) .........................................................................................................1

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ..................................................................................2, 7, 8

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .............................................................................................................7

*O'Reilly v. Morse*,
   56 U.S. 62 (1854) .................................................................................................................4

*Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.*,
   114 F. Supp. 3d 192 (D. Del. 2015) ....................................................................................4

*Secured Mail Sols. LLC v. Univeral Wilde, Inc*,
  873 F.3d 905 (Fed. Cir. 2017) ..................................................................................10

*Sound View Innovations, LLC v. Delta Air Lines, Inc.*,
  No. CV 19-659-CFC, 2020 WL 1667239 (D. Del. Apr. 3, 2020) ...........................10

**Statutes**

28 U.S.C. § 636(b)(1) ........................................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 72(b)(2) ..........................................................................1

D. Del LR72.1 ....................................................................................................................1

U.S. Patent No. 10, 169, 987 ......................................................................................1, 3, 4

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(2) and D. Del LR72.1, Plaintiff RideShare Displays, Inc. ("RSDI") responds to Defendant Lyft, Inc's ("Lyft") objections to Magistrate Judge Hall's July 12, 2021 Report and Recommendation ("R&R") recommending denial of Lyft's Motion to Dismiss. Lyft's objection does not articulate any specific error in the R&R, or that Judge Hall failed to consider some crucial fact, but instead recites the same arguments that the R&R deemed unpersuasive.

The R&R was correct in finding that: (1) Claim 1 of U.S. Patent No. 10,169,987 ("the '987 patent") is not representative of all claims of the five asserted patents; (2) *Alice* Step 1 is not satisfied because RSDI's patents are not directed at an abstract concept, but rather claim a tangible system to resolve a problem in the rideshare industry; and (3) that even if the claims were directed to an abstract idea, that the determination of whether the claims lack and inventive concept under *Alice* Step 2 involves questions of fact that preclude dismissal at this stage.

## I.  APPLICABLE LAW

While the Supreme Court's decision in *Alice* opened the door to invalidation of certain claims directed to laws of nature, physical phenomena and abstract ideas, *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), it later recognized in the seminal *Mayo* case that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). Since then, courts have employed the two-part test established in *Alice* to determine whether a claim is directed to an abstract idea: first, a court must determine whether the claim is directed to an abstract concept *per se,* 573 U.S. at 218; and if so, must then determine whether the claimed elements, considered both individually and as an ordered combination, transform the nature of the claims into a patent-eligible application. 573 U.S. at 217-18. The Supreme Court did not

intend for determinations of patent eligibility to rest on an infringer's ability to reduce the claims to their most basic possible interpretation. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.").

## II. FACTUAL BACKGROUND

The burgeoning rideshare industry, while brimming with opportunities for cheaper transit, new jobs, and greater mobility, also came fraught with challenges, particularly in relation to rider and driver safety. News media has long catalogued assaults, sex crimes, and even murders arising from mistaken passenger pickups, whereby rideshare passengers either inadvertently got into the wrong car or a driver picked up an unintended passenger. The '637 Patent, filed on May 27, 2015, titled "Vehicle Identification System," (D.I. 6-1), and the remaining four asserted patents (continuations of the '637 Patent) (D.I. 6-2–6-5) were conceived to overcome these challenges and facilitate a seamless and safe experience for rideshare passengers and drivers. Specifically, the patents claim systems of connecting drivers and passengers through signals dispatched from a separate controller, which would send both the passenger and driver a unique signal to identify their transactions, providing assurance to both passenger and driver that the intended passenger enters the correct vehicle. (*See* Compl. ¶21).

While RSDI was first to patent its invention, it was not the only entity recognizing a need for such innovation. Two years later, Lyft filed patent applications for an identical invention, attesting to the U.S. Patent and Trademark Office (USPTO) that such an invention was neither abstract nor conventional. Lyft then implemented its Amp system for its rideshare fleet that infringes the Patents-in-Suit. In doing so, Lyft ignored RDSI's patents, prompting this lawsuit.

2

## III. ARGUMENT

The R&R was correct to recommend denial of Lyft's motion to dismiss. First and foremost, the Patents-in-Suit, describe through a series of distinct and detailed claims, a tangible system to mitigate a safety concern in the rideshare industry, and therefore are not directed toward an abstract idea. In addition, the Patents-in-Suit, while using known components, claim "something more" than a series of conventional parts, by implementing an inventive solution to a prevalent security concern surrounding vehicle identification that is especially problematic in the rideshare industry. Lyft, having sought patent protection for its own identical invention, cannot now argue that RSDI's Patents-in-Suit are an unpatentable "abstract idea." Moreover, at this stage of the dispute, RSDI has sufficiently alleged disputes of fact that preclude dismissal.

### A. Lyft Fails to Show Claim 1 is Representative of all Claims

The R&R was correct in declining to find Claim 1 representative of all claims. Unlike Lyft, which willfully ignored the many key limitations contained in various claims of the Patents-in-Suit, the R&R acknowledged several examples whereby claims include distinct features or limitations. (D.I. 46 at 6-7).

For example, Claim 1 of the '987 Patent includes at least two non-conventional and non-generic elements. It requires both "a controller communicatively coupled to the transceiver, wherein the controller is adapted to generate a first signal to be transmitted by the transceiver to a mobile communication device associated with a driver of the vehicle when it is determined that the vehicle is within a predetermined distance of a specific location…" (*See* D.I. 15, MTD at 5). The first element, a controller that sends the driver a ride specific signal, is common to all claims of the patents. However, the second element — at a pre-determined distance — exists in Claim 1 of the '987 and '199 Patents but *not* in Claim 1 of the '637, '525 or '417 Patents. Lyft

disregarded these distinguishing features in the independent claims such as the signal received by the rider ('525 Patent), having a notification signal ('199 Patent), and requiring that there are no duplicates of the identification signal in the pick-up area ('417 Patent). Moreover, dependent claims inject further key differences, such as depicting where the signal is received (*see* Claim 2 of the '637 Patent), the type of indicators (*see* Claim 7 of the '987 Patent), or where the signals originate (*see* Claim 3 of the '417 Patent).

To paint Claim 1 as representative of all claims, Lyft unsuccessfully attempted to obfuscate the true claim language by extracting certain common elements across the patents. Lyft's conclusory recitation of these commonalities is no substitute for a review of the claims for meaningful differences. *See Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.*, 114 F. Supp. 3d 192, 199 (D. Del. 2015). The R&R was correct to see through Lyft's over generalizations and find that Claim 1 is not representative of all other claims.

### B. The RSDI Patents Claim Patent-Eligible Inventions Because The Claims Are Not Directed To An Abstract Idea.

The R&R properly concluded that RSDI's Patents-in-Suit are not directed to an abstract idea, as they provide concrete and inventive solutions for protecting the rideshare community. (D.I. 51 at 7-8). Under *Alice* Step One, the abstract idea exception to patentability prevents patenting an outcome where "it matters not by what process or machinery the result is accomplished." *O'Reilly v. Morse*, 56 U.S. 62, 65 (1854). This is because a patentee cannot improperly monopolize "the basic tools of scientific and technological work" without directing its claims to a specific invention. *Alice*, 573 U.S. at 216 (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013)). RSDI's patents, which describe technical components that, operating together, enable more effective matching of passengers with their assigned drivers in the rideshare industry, implicate none of the foreclosure or preemption

4

concerns associated with the patenting of abstract ideas.

Following this logic, courts have consistently found claims to *tangible systems* like this one to be patent eligible. *See Ironworks Patents, LLC v. Apple Inc.*, No. CV 17-1399-RGA, 2018 WL 2944475, at *3 (D. Del. June 12, 2018) (claims were patent eligible where they did not preempt the use of vibration or vocabulary to convey information because claims were directed to systems of "specific components that are configured to perform specific functions in response to specific events"); *see also Immersion Corp. v. Fitbit, Inc.*, 2018 WL 1156979, at *14 (N.D. Cal. Mar. 5, 2018) ("[D]istrict courts ... have rejected § 101 challenges where the claims are directed to a physical device that merely incorporates an abstract idea as part of its operation"). The R&R properly recognizes the significance of the physical implements claimed in RSDI's patent, in particular, highlighting the invention's use of a separate controller to send matching indicators to passengers and drivers alike. (D.I. 51 at 7).

The R&R also properly concluded that the claims are not abstract because, as instructed by the specification, which must be accepted as true for the purposes of a motion to dismiss, the claims are directed to solving a particular problem in the rideshare industry. (*See id.* at 7-8). In any other context, Lyft presumably would agree. In fact, one need only look to Lyft's own prior arguments before the USPTO. There, Lyft argued that sending the same identifier to passenger and driver was not "abstract" and rideshare created "new and unique problems for providing services at a point of service." (D.I. 17-2, at 15). These prior affirmations stand in stark contrast to Lyft's contention that the claims of the Patents-in-Suit are analogous to practices that have been "commonplace for decades for a traveler to set up a car service for transportation upon arrival at a destination." (D.I. 51 at 6). It should come as no surprise that the R&R was unpersuaded by Lyft's new attempts to reduce the claims to "correctly matching riders and

5

drivers with visual indicators," drawing inapt comparisons to "signs displaying passengers' names or other visual indicators (hotel name, group ID, etc.) that distinguish vehicles in a crowded area," (*id.*), when clearly the claims are not directed to the simple idea of matching, but to how a *specific system* avoids problematic mismatches by using elements such as a separate controller, the rider's mobile phone, the driver's mobile phone, a display visible from a car's exterior, and proximity to the pick-up spot. These particularized claims do not preempt other solutions or improperly monopolize "basic tools of scientific and technological work" that implicate patentability concerns. *See Alice*, 573 U.S. at 216 (internal citation omitted).[1]

The RSDI patents mitigate the threat of an impostor driver deploying fake displays to lure unsuspecting passengers into a strange vehicle and likewise protect rideshare drivers from inadvertently picking up a bad actor in lieu of an intended passenger. The patents significantly improve on the existing, inadequate solutions previously deployed to ensure passenger safety, such as relying on assigned numbers, signs, or license plates to identify drivers, which at best, provide a partial solution to a multi-faceted problem. In addition to providing assurance to a passenger, the RSDI patents also provide means for the driver to securely identify their passenger, something that cannot realistically be accomplished, as Lyft now contends, with "signs displaying passengers' names or other visual indicators...." While drivers otherwise would be forced to rely on mere verbal confirmation from a passenger, RSDI's patents eliminate the problems associated with voice or speech impediments, hearing and language issues, and simple deception, that may pose risks to billions of riders and millions of drivers. Critically, the

---

[1] The USPTO recognized the distinction between RSDI's claims to a tangible system and Lyft's ineligible alternative, during the respective examinations of the parties' patents. While Examiners rejected Lyft's patents as ineligible, not once in the five separate prosecutions did Examiners declare any of the more specific RDSI Patents-in-Suit to be ineligible.

claimed invention sends a signal to permit the driver and the passenger to authenticate *each other*. RSDI's *and* Lyft's patents show that the solutions to this problem had to be developed because existing safeguards like visual cues and verbal confirmations had been inadequate to protect the rideshare community. This is the position Lyft took when it attempted to patent identical technology.[2] The R&R was correct to find fault in Lyft's sudden change in position.

The R&R was correct to conclude that the RSDI patents are not abstract or directed to computerizing human activity. (D.I. 46 at 8-9). Some inventions that "automate tasks that humans are capable of performing are patent eligible if properly claimed[.]" *McRO*, 837 F.3d at 1313; *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F. Supp. 3d 533, 537 (D. Del. 2019) ("Methods with real-world impact, implemented on physical devices, are not rendered abstract merely by the ability of a human to achieve a similar result … via different means."); *see also EcoServs., LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 643 (Fed. Cir. 2020) ("That the claimed system achieves automation of a task previously performed by humans, however, does not mean the claimed system is necessarily directed to an abstract idea."). Contrary to Lyft's hollow assertions, (see D.I. 51 at 7), human activity is not a substitute for the technology in RSDI's patents. For instance, a human dispatcher may assign a car number and accompanying placard to a driver, and then provide the car number to the passenger for identification, but that car number is neither unique to any ride transaction nor does it provide means for the driver to verify the rider. Here, where the indicator is unique to the ride and sent to both parties (*See* Claim 1 of the '525 Patent), then the passenger and driver *each* confirm their match. This creates

---

[2] Judicial estoppel applies when a party convinces a tribunal to adopt a position and then takes a clearly contradictory position. *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (estoppel does not have rigid rules but stems from successful pursuit of an argument to the detriment of another party). At best, the fact that Lyft took contrary positions before the USPTO when seeking its own, analogous patent creates factual question as to whether the claims at issue are abstract or lack and inventive concept; at worst, they constitute blatant hypocrisy that the Court should not entertain or reward. In either case, the Court should adopt the R&R and deny Lyft's Motion to Dismiss.

additional safeguards and makes a safer transaction than was possible with employing traditional matching practices, such as the sign boards or calling cards Lyft references in its brief.

### C. RSDI's Pleading Is Sufficient To Establish An Inventive Concept, Precluding Dismissal At This Stage.

Lyft's Objection contends that the Patents-in-Suit are ineligible because they claim a low-tech function of identifying a vehicle, which is tantamount to practices that have been "commonplace for decades" and carried out via "low-tech means such as a telephone." (D.I. 51 at 6). Even setting aside the notion that technical sophistication is relevant (it is not), RSDI's invention more than adequately contains "an inventive concept," which "can be found in the non-conventional and non-generic arrangement of *known, conventional pieces.*" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added). Indeed, Courts have consistently found particular applications of otherwise simple technologies to be patent eligible.

Patent eligible claims may be focused on a "specific asserted improvement" when there is "no evidence that the process previously used ... is the same as the process required by the claims." *McRO*, 837 F.3d at 1303, 1314. A patent claiming a technological solution to a problem may be patent eligible where the solution was "something more" than an attempt to monopolize an abstract idea. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248–50 (Fed. Cir. 2014). Here, RSDI's patents provide a technical solution to a pervasive challenge within the rideshare industry, namely, the challenge of matching passengers with drivers to avoid mistaken identity through the use of specifically articulated technology. Lyft affirmed to the USPTO during its own patents' prosecution that: "[m]ore accurate and specific matching of providers and requestors provides advantages over previous systems. This ordered combination of steps ... is not well-known, routine, or conventional and arises from the unique problems being faced by

8

network connected providers and requestors connected through a matching system." (D.I. 17-2, at 20).[3] Lyft now takes the opposite position, claiming, "there is not a single technical improvement that is claimed in the asserted patents..." and, without citation to the specification or a single allegation in the Complaint, Lyft argues that "factual allegations in the complaint which contradict the specification... need not be credited as true" (D.I. 51 at 9-10). These conclusory arguments are insufficient to call into question the R&R's conclusions, which properly recommended denial Lyft's Motion to Dismiss consistent with the applicable case law. (*See* D.I. 46 at 8-9).

The R&R correctly applied the Federal Circuit's reasoning in *Bascom* to recommend denial of Lyft's Motion to Dismiss because it could not conclude, as a matter of law, that the patents lack an inventive concept. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1343 (Fed. Cir. 2019) (upholding patents claiming a system for blocking internet websites using a blacklist of inappropriate websites housed on a remote server). The Federal Circuit has held that claims may be patent eligible when they evince "an inventive concept ... in the ordered combination of claim limitations that transform the abstract idea ... into a *particular, practical application*..." *Id.* at 1352 (emphasis added). RSDI proposes a solution to a particular application in the rideshare context. This is evident from claims that, *inter alia*, instruct that the system monitors the driver's location so that identifier will only display when the driver is at a pre-determined distance to the rider, a limitation that prevents unnecessarily or unexpectedly displaying visual signals capable of distracting the rideshare driver and other motorists on the road. Lyft's continued reliance on *Secured Mail Sols. LLC v. Univeral Wilde, Inc*, 873 F.3d 905

---

[3] Lyft's own patents note the problem is different for rideshare, citing issues for providers "to identify which of multiple requestors is associated with a request" resulting in "a mismatching of providers and requestors" which in turn may "lead to fraud and safety problems...." (USP 10,636,108 at Col. 2, ln. 50 *et seq.*).

(Fed. Cir. 2017) is misplaced. As stated in the R&R, "even if... every single one of the claims was directed to an abstract idea," as the Federal Circuit found in *Secured Mail*, "the motion should still be denied at step two." (D.I. 46 at 9).

The R&R was correct to conclude that at the very least, Lyft's Motion to Dismiss must be denied because there remain genuine issues of material fact as to whether RSDI's patents claim conventional, routine and generic technology, or "something more" as required for patentability. Whether a skilled artisan would think the claims perform conventional activities presents a genuine issue of material fact, which prevents dismissal at the pleading stage. *Berkheimer v. HP Inc*, 881 F.3d 1360, 1368 ("[T]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact"). Applying that standard, the Federal Circuit found it inappropriate to decide in the context of a dispositive motion whether technology disclosed and claimed was conventional, routine and generic. *Id.* This reasoning applies with equal or greater force at the motion to dismiss stage, where well-pleaded allegations must be accepted as true. *See Sound View Innovations, LLC v. Delta Air Lines, Inc.*, No. CV 19-659-CFC, 2020 WL 1667239, at *2 (D. Del. Apr. 3, 2020) (finding that "statements in the specifications ... incorporated by reference in the complaint plausibly establish that the asserted claims contain an inventive concept."). Recognizing that the pleading sufficiently alleged the existence of an inventive concept, the R&R was correct in determining that, at the very least, outstanding factual issues preclude dismissal of the Complaint at this stage.

## IV. CONCLUSION

For the reasons set forth in this response, the Court should adopt Judge Hall's July 12, 2021 R&R and Lyft's Motion to Dismiss should be denied.

Dated: August 09, 2021

                                              SEITZ, VAN OGTROP & GREEN, P.A.

                                              /s/ R. Karl Hill
                                              R. KARL HILL (2747)
                                              222 Delaware Avenue, Suite 1500
                                              Wilmington, DE 19801
                                              302-888-7604
                                              khill@svglaw.com

Of Counsel:

Michael J. Kasdan, Esq.
Joseph M. Casino, Esq.
Wiggin and Dana LLP
437 Madison Avenue – 35th Floor
New York, New York 10022

# CERTIFICATION

Pursuant to the Standing Order for Objections Filed Pursuant to Fed. R. Civ. P. 72 dated October 9, 2013, undersigned counsel certifies that these objections do not raise new legal or factual arguments.

Dated: August 09, 2021

                                                  SEITZ, VAN OGTROP & GREEN, P.A.

                                                  /s/ R. Karl Hill
                                                  R. KARL HILL (2747)
                                                  222 Delaware Avenue, Suite 1500
                                                  Wilmington, DE 19801
                                                  302-888-7604
                                                  khill@svglaw.com

Michael J. Kasdan, Esq.
Joseph M. Casino, Esq.
Wiggin and Dana LLP
437 Madison Avenue, 35th Floor
New York, New York 10022